IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01562-MSK-NYW

THE REGENTS OF THE UNIVERSITY OF COLORADO,

       Plaintiff,

v.

ALLERGAN, INC.
and ALLERGAN BOTOX LIMITED,

       Defendants.

---

## [PROPOSED] STIPULATED ORDER FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY-STORED INFORMATION

---

WHEREAS, the parties to the above-captioned case may seek discovery of documents, information or other materials that constitute electronically stored information ("ESI");

WHEREAS, the parties have, through counsel, stipulated to the entry of this Stipulated Order for Production of Documents and Electronically-Stored Information;

NOW THEREFORE; upon the stipulation and consent of the parties and for good cause shown, the Court hereby ORDERS that:

1.    **SCOPE**

This Order shall govern the disclosure and production of documents and ESI in this case and supplements the provisions of Fed. R. Civ. P. 16, 26, 33, 34, 37, and 45 insofar as those Rules relate to the production of documents and ESI.

2. **DEFINITIONS**

(a) "Document" shall have the same meaning as "documents and electronically stored information" defined in Fed. R. Civ. P. 34(a).

(b) "Metadata" shall mean (i) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user or such system.

(c) "Parties" or "Party" shall mean plaintiffs and defendants named in the First Amended Complaint.

(d) "Privilege" or "Privileged" shall mean documents or parts of documents that are protected from disclosure by the attorney-client privilege; the work product doctrine; or any other applicable privilege or doctrine recognized by law.

3. **IDENTIFICATION AND REVIEW PROTOCOL**

(a) If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the proposed search terms and the proposed repositories to be searched along with its responses and objections to the discovery request. As to discovery requests and responses that were served prior to the filing date of this stipulation, the producing party shall disclose no later than March 31, 2015, the proposed search terms and the proposed repositories to be searched. If the requesting party objects to the proposed search terms or proposed repositories to be searched, the parties shall meet and confer within 14 days of the producing party disclosing proposed search terms, and the parties shall attempt in good faith to reach an agreement regarding the scope of the search. If the parties cannot agree on search terms or

repositories, the parties shall simultaneously (but no later than 21 days from the first disclosure of proposed search terms) submit competing proposals to the Court, which will select one of the proposals.

4.     **PRIVILEGE LOGS**

(a)     The parties are not required to include information in their privilege logs that was generated after June 3, 2014, the filing date of the Complaint in this matter.

(b)     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A)-(B).

(c)     Within 45 days of making a production from which documents are withheld on the basis of privilege, the producing party shall serve a privilege log on the requesting party that lists the documents withheld from the production.

(d)     A party's privilege log shall include:

    (i)     the Bates numbers of each withheld document,

    (ii)    the date of the document,

    (iii)   a description of the type of document (*e.g.*, e-mail, memo),

    (iv)    the author(s) and recipient(s) of documents, as listed on the document,

    (v)     a description of the general subject matter and/or contents of the document that does not itself reveal privileged information, but which sufficiently establishes the elements of each asserted privilege, and

    (vi)    the privilege claimed (*e.g.*, "attorney-client communication privilege" or "work product doctrine")

(e)     Intentional or inadvertent inclusion of privileged information in a privilege log will not be deemed a waiver of privilege.

(f)     This protocol for privilege logs may be modified by written stipulation of the parties.  This protocol for privilege logs may also be modified by order of the Court *sua sponte* or upon a party's motion following a good faith meet and confer by the parties regarding any proposed changes, <u>and an informal discovery conference with the court</u>.

(g)     If the requesting party objects to a claim of privilege for a document listed on a privilege log, the requesting party must meet and confer with the producing party within 14 days of receiving the privilege log, or within 14 days of receiving new information that provides a new basis to object to a claim of privilege.  The meet and confer may involve the producing party supplementing the privilege log to provide more information as to the basis for the claim of privilege.  If the parties cannot, in good faith, resolve the dispute, the requesting party <u>will initiate the informal discovery dispute process with the court within 7 days of the conclusion of the meet and confer, and</u> shall file any motion with the Court within ~~7~~ <u>three (3)</u> days of the conclusion of the ~~meet and confer efforts~~<u>informal discovery conference with the court</u>.

5.     **PRODUCTION SPECIFICATIONS**

(a)     Documents shall be produced in the following format:

(i)     <u>TIFFs</u>:  ESI and non-ESI shall be produced to the requesting party as single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

(ii)    <u>Native Format</u>:  The only files that should be produced in native format are files not easily converted to image format, such as Excel or Access files.  Native files will be produced with a full path to the native document from the "NATIVEPATH" field. Bates-

numbered slip sheets will also be provided.

(b) <u>Metadata</u>: The following metadata fields, if they exist, shall be provided along with a production of documents: Custodian; Email Subject; From; To; CC; BCC; Date Sent; Date Received; Filename; Author; Date Created; Attachment Range; Attachment Begin; Attachment End (or the equivalents thereof).

(c) <u>Bates numbering</u>: Documents produced in this action must bear Bates numbers, which shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates numbering should be sequential. The parties agree to use placeholders (*e.g.*, "intentionally left blank" pages), rather than skipping Bates numbers in productions.

(d) <u>Unitizing of documents</u>: Documents produced in this action should be logically unitized: multiple documents should not be merged into a single record, and single documents should not be split into multiple records. The parties will make their best efforts to have their service providers unitize documents correctly and will commit to address situations where there are improperly unitized documents.

(e) <u>Parent-Child Relationships</u>: Documents' parent-child relationships (the association between an attachment and its parent document – for example, e-mails and their attachments) should be preserved. Bates numbering of a parent document and any attachments should be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s).

6. **PRESERVATION**

 (a) The parties acknowledge that they have taken reasonable steps to implement a "litigation hold" with respect to accessible or inaccessible information, documents, and other tangible objects in the parties' custody or control that are potentially relevant to this matter.

 (b) This Order does not modify any document preservation requirements under the Federal Rules of Civil Procedure and applicable case law.  This Order does not limit any protection available under Fed. R. Civ. P. 37(e).

 (c) The Parties agree that the following categories of attached as Schedule A need not be preserved.

7. **NON-PARTY PRODUCTIONS**

 (a) Unless otherwise agreed among the parties, the party that first issues a non-party subpoena (the "First Party") will be responsible for: (1) taking reasonable steps to negotiate that the non-party's production are processed in accordance with the specifications in this Order; (2) if necessary, engaging a vendor to process the non-party production in accordance with the specifications in this Order; (3) distributing non-party productions to all parties' counsel within 7 days of receiving the production.

 (b) If a non-party production is not Bates numbered, the First Party will provide unique prefixes and Bates numbers to the service provider and will notify all parties of the prefix, Bates range, and production.

8. **MISCELLANEOUS**

 (a) <u>Additional Parties</u>.  Any party named, served, and appearing in this action after the date this Order is approved, shall be bound by its terms, effective once the Order has been served upon such party, unless the Court orders otherwise on good cause shown.

      (b)      <u>Further Amendment</u>.  Except as otherwise provided in this Order, its terms may be amended only by written stipulation of the parties<u>, to the extent that such amendment does not affect any requirement by the court,</u> or by order of the Court, on noticed motion, for good cause shown.

      (c)      <u>Objections Preserved.</u>  This Order does not address, limit, or determine the relevance, discoverability, or admission into evidence of any document.  Nor do the parties waive any objections as to the production, discoverability, or confidentiality of documents subject to this Order.  The parties will request that the Court enter a separate protective order governing productions in this matter.

DATED at Denver, Colorado, this <u>30</u><sup>th</sup> day of <u>March</u>, 20<u>15</u>.

                        BY THE COURT:

                        s/ Nina Y. Wang
                        _____
                        United States Magistrate Judge

STIPULATED AND AGREED:

| /s/ Eric M. Acker<br>Eric M. Acker<br>EAcker@mofo.com<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive<br>San Diego, CA  92130-2040<br>Telephone:  858.720.5100<br>Facsimile:  858.720.5125<br><br>Attorney for Plaintiff The Regents of the University of Colorado | /s/ Jeffrey T. Thomas<br>Jeffrey T. Thomas<br>GIBSON, DUNN & CRUTCHER LLP<br>3161 Michelson Drive<br>Irvine, California 92612<br>Telephone: (949) 451-3967<br>Facsimile: (949) 475-4670<br>Email:  jtthomas@gibsondunn.com<br><br>Attorney for Defendants Allergan and Allergan BOTOX Limited |
|---|---|

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in

use.